UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HERMAN ANTHONY KEELING, Plaintiff,

v. Civil Action No. 3:14-cv-P697-DJH

LOUISVILLE METRO CORRECTIONS DEPARTMENT et al., Defendants.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Herman Anthony Keeling, who was a pretrial detainee at the Louisville Metro Department of Corrections (LMDC) at the pertinent time, filed this *pro se*, *in forma pauperis* action pursuant to 42 U.S.C. § 1983. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

**I. SUMMARY OF CLAIMS**

Plaintiff names as Defendants the LMDC and Mark Bolton, LMDC Director, in his official capacity. He states that on October 1, 2013, he was incarcerated at LMDC and requested medical care but was denied. He states that only with repeated requests and "taking the chance of being assaulted would [he] get care." He states: "I was denied one of my medications because of a[n] incident with nurse and inmate. Some nurses would give it to me after seeing my condition and were confronted for doing so."

Plaintiff complains that after he was moved to a single cell he asked to have the showers cleaned but was denied, even after he offered to clean them himself. He states that he filed a grievance and received a response that he could show to get cleaning supplies, which worked "for a while." Plaintiff next alleges that he filed a grievance about not getting toiletries and soap

and explained in that grievance that when he asked the officer for those items, he was cursed at with "vulgar or abusive language." He also states that he was put in crowded dorms, designed to hold 24 inmates but which had 32-34 inmates fighting over toiletries, soap, seating, and beds.

Plaintiff next complains of "criticism and retaliation for reporting of use of accessive force, reporting of misconduct, use of vulgar or abusive language, cold cells, my taking of a sworn statement with the police about the death of a inmate, and poisoning of my food." He further alleges that he was "assaulted by a officer (Higgons) which I filed a grievance about. The grievance was rejected and returned to me." He also complains about exposure to second-hand tobacco smoke and chemicals sprayed in the air to mask the smell of smoke. He further alleges that since they found out about him filing[1] this § 1983 form he has not been allowed to use the law library kiosk. He asks for monetary and punitive damages and to be "allowed to stay in single cell and all wright ups expungement of records."

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of*

---

[1] The Court assumes Plaintiff is referring to filling out the complaint or to his intent to file.

*Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### *Request for injunctive relief*

Plaintiff's requests for injunctive relief are moot because he is no longer incarcerated at the LMDC. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Dismissal of that requested relief is, therefore, proper.

### *Conditions of confinement*

The Cruel-and-Unusual-Punishments Clause does not apply to pretrial detainees. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (*abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)). However, pretrial detainees, like Plaintiff, are shielded from cruel and unusual punishment by the Due-Process Clause of the Fourteenth Amendment, which provides similar if not even greater protection than the Cruel-and-Unusual-Punishments Clause. *Id.*

Plaintiff alleges that his request to have the showers cleaned was denied, even after he offered to clean them himself. However, he states that he received a response to a grievance that he could show to get cleaning supplies from December 20, 2013, until September 23, 2014. He also complains of "cold cells" and "poisoning of my food."

With regard to his ability to get cleaning supplies, Plaintiff admits in his complaint that he was given cleaning supplies until September 23, 2014. He signed his complaint on October 12, 2014, less than three weeks later.

Unsanitary conditions of confinement rise to the level of a constitutional violation only where such conditions deprive a prisoner of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The length of confinement is important in determining whether conditions of confinement meet constitutional standards. *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."). Periods of confinement under unsanitary conditions of many months' duration have been found to violate the Eighth Amendment. *See, e.g.*, *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) (allegations that prison officials provided a prisoner with one bar of soap, a sample size tube of toothpaste, and no means to launder clothes for eight months stated a claim under the Eighth Amendment); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (a prisoner's allegations that for sixteen months his cell was infested with cockroaches and other vermin stated an Eighth Amendment claim). Here, although Plaintiff complains that he was deprived of cleaning supplies during this three-week period, he does not allege that his cell was unsanitary or that he suffered any physical harm from not having access to cleaning supplies during this time. Moreover, the Court finds that the duration of time about which he complains is not lengthy enough to rise to the level of a constitutional violation.

Plaintiff's allegations of "cold cells" and "poisoning of my food" fail to state a constitutional claim. These allegations are merely conclusory and lack the requisite factual specificity. Some factual basis for all claims must be set forth in the pleadings. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). The Court is not required to accept conclusory and unsupported statements. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

Consequently, the claims alleging merely that the cells were "cold" and that his food was "poison[ed]" will be dismissed for failure to state a claim upon which relief may be granted. *See id.* at 511-12.

*Overcrowding*

Plaintiff alleges that he was put in "over crowded dorms which hold 24 and had 32-34 inmates that fight over toiletries, soap, seating, and beds." Overcrowding in a prison is not itself a violation of the Constitution. *Rhodes v. Chapman*, 452 U.S. at 347-48. Overcrowding conditions can be restrictive and even harsh; however, they do not violate the Eighth Amendment unless they deprive the inmate of the minimal civilized measure of life's necessities. *Id.* at 348. Plaintiff's allegations that the cell pods are crowded and that there was fighting over toiletries, soap, seating, and beds are not deprivations of the minimal civilized measure of life's necessities. Consequently, Plaintiff fails to state a claim upon which relief may be granted.

*Vulgar and abusive language*

Plaintiff next alleges that when he asked an officer for toiletries and soap he was cursed at with "vulgar or abusive language." The Sixth Circuit has held that harassing or degrading language by a prison official, although unprofessional and despicable, does not amount to a constitutional tort. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials."). Consequently,

5

Plaintiff's allegations concerning the language used by an LMDC officer does not state a constitutional claim.

### *Rejection of grievance*

Plaintiff alleges that a "grievance was rejected and returned to me." An inmate grievance procedure within the prison system is not constitutionally required. *See United States ex rel. Wolfish v. Levi*, 439 F. Supp. 114, 163 (S.D.N.Y. 1977), *aff'd sub nom*, *Wolfish v. Levi*, 573 F.2d 118 (2d Cir. 1978), *rev'd on other grounds*, *Bell v. Wolfish*, 441 U.S. 520 (1979); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986); *O'Bryan v. Cnty. of Saganaw*, 437 F. Supp. 582, 601 (E.D. Mich. 1977). If the prison provides a grievance process, violations of its procedures do not rise to the level of a federal constitutional right. *Spencer*, 638 F. Supp. at 316. Therefore, the fact that a grievance was rejected does not give rise to a § 1983 claim. *Id.*; *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Thus, Plaintiff's claim relating to the grievance must be dismissed.

### *Second-hand smoke*

Plaintiff complains about exposure to second-hand tobacco smoke, also known as environmental tobacco smoke or ETS, and chemicals sprayed in the air to mask the smell of smoke. It is unclear whether Plaintiff is complaining of a present injury from exposure to smoke or of future harm.

With regard to present injury from ETS, under the Fourteenth Amendment Due-Process Clause, a pretrial detainee, like Plaintiff, has "a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)). "To sustain a cause of action under § 1983 for failure to provide medical treatment,

[P]laintiff must establish that the defendants acted with 'deliberate indifference to serious medical needs.'" *Id*. at 686 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

To satisfy the objective component on an ETS claim, a prisoner must show that his medical needs are "sufficiently serious," *i.e.*, that the exposure to smoke causes more than mere discomfort or inconvenience. *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005). To satisfy the subjective component, a prisoner must show that prison authorities knew of, and manifested deliberate indifference to, his serious medical needs. *Id*.

Here, Plaintiff does not allege that his exposure to ETS caused him more than mere discomfort or inconvenience. He does not allege that he suffered from and that Defendants were aware of a "sufficiently serious" medical need, such as asthma or other medical condition for which exposure to smoke was deleterious. Consequently, he fails to state a claim based on present harm from ETS exposure.

With regard to possible future harm, under *Helling v. McKinney*, 509 U.S. 25, 35 (1993), Plaintiff must allege that, regardless of his present health, the level of ETS in the prison creates an unreasonable risk of serious damage to his future health. The objective element for a claim regarding future harm from ETS focuses on whether levels of ETS in the facility were so high that they violated contemporary standards of decency. For example, in *Helling*, an Eighth Amendment claim was stated because the prisoner in question was forced to share a cell with another inmate who smoked five packs of cigarettes a day. Here, Plaintiff simply alleges that he was exposed to second-hand smoke. The Supreme Court in *Helling* did not mandate smoke-free prisons. *See Williams v. Howes*, No. 1:05-cv-817, 2007 WL 1032365, at *14 (W.D. Mich. Mar. 30, 2007) (citing *Scott v. Dist. of Columbia*, 139 F.3d 940, 942 (D.C. Cir. 1998) and *Mansoori v. Lappin*, No. 04-3241-JAR, 2007 WL 401290, at *10 (D. Kan. Feb. 1, 2007)). It is also obvious

from the case law that some exposure to second-hand smoke is a risk that today's society chooses to tolerate. *See Griffin v. DeRosa*, 153 F. App'x 851, 853 (3d Cir. 2005) (per curiam) (a prisoner's allegation that he had been exposed to ETS in inadequately ventilated restrooms over twenty months failed to show that the prisoner was exposed to unreasonably high levels of ETS contrary to contemporary standards of decency); *Hankins v. Bethea*, No. CIVA 0:05-3334 DCNBM, 2007 WL 172509, at *6 (D.S.C. Jan. 18, 2007) ("[e]xposure to moderate levels of cigarette smoke is a common fact of contemporary life"); *Colon v. Sawyer*, No. 9:03-CV-1018 LEK/DEP, 2006 WL 721763, at *9 (N.D.N.Y. Mar. 20, 2006) (asthmatic plaintiff's claim that "he [was] housed in a dormitory unit where smoking [was] permitted, and that he [was] subjected to ETS near the dining hall entrance and exit, as well as his speculation that such circumstances 'may result in catastrophic harm to [him],' ... simply [did] not describe conditions that rise to a level which today's society chooses not to tolerate"). Therefore, the Court will dismiss Plaintiff's claim related to ETS for failure to state a claim.

Plaintiff's allegations regarding chemicals in the air are entirely conclusory. He does not explain what chemicals he is referring to, although it seems most likely that he is referring to an air freshener. He does not allege that he is allergic or particularly sensitive to such chemicals or that he suffered any harm from the alleged chemicals. Moreover, spraying air freshener would seem to be an attempt to make the prison more pleasant, not a constitutional injury. To the extent that Plaintiff is attempting to raise a separate claim based on exposure to unnamed chemicals in the air, the Court finds that Plaintiff has failed to do so.

*Denial of medication*

Plaintiff alleges that he "was denied one of my medications because of a incident with nurse and inmate. Some nurses would give it to me after seeing my condition and were

confronted for doing so." He does not explain the nature of his "condition" or his medication. However, the Court will allow Plaintiff an opportunity to amend his complaint to name the specific individual(s) who was/were responsible for denying his medication and to provide details as to his condition and medication. *See LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA.").

The Court notes that merely naming LMDC and LMDC Mark Bolton in his official capacity does not suffice in this context. LMDC is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983. *Compare Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983). In this situation, it would be the Louisville Metro Government that is the proper defendant. *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself). Further, the Louisville Metro Government is a "person" for purposes of § 1983. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978).

If an action is brought against an official of a governmental entity in his official capacity, the suit should be construed as brought against the governmental entity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, in the case at bar, Plaintiff's claims against Defendant Bolton in his official capacity are actually brought against the Louisville Metro Government. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

However, a municipality, like the Louisville Metro Government, cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the [county] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct"). The complaint does not allege the existence of a Louisville Metro policy or custom. Therefore, Plaintiff fails to state a claim against the LMDC or Defendant Bolton in his official capacity.

*Retaliation*

Plaintiff alleges that since "they have found out about me filing this form 42 U.S.C. § 1983 I have not been able to use the legal law library (kiosk)." The Court will allow Plaintiff an opportunity to amend his complaint to name the specific individual(s) who was/were responsible for denying him access to the "legal library (kiosk)." *See LaFountain v. Harry*, 716 F.3d at 951.

10

*Use of excessive force*

Plaintiff alleges that he was "assaulted by a officer (Higgons)." Plaintiff does not explain what happened during the alleged assault or whether he sustained any injuries. Moreover, Officer Higgons is not a defendant to this action. However, the Court will allow Plaintiff an opportunity to amend his complaint to add Higgons as a defendant and to provide details as to the alleged assault and whether he sustained any injuries. *See LaFountain v. Harry*, 716 F.3d at 951.

### III. CONCLUSION AND ORDER

**IT IS ORDERED** that Plaintiff's claims regarding the conditions of his confinement, overcrowding, language used by LMDC officer(s), the rejection of a grievance, and second-hand smoke are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that **within 30 days** of entry of this Order Plaintiff may file an amended complaint. In the amended complaint, Plaintiff must provide greater detail as to the facts surrounding the alleged denial of medication, the alleged retaliation, and the alleged assault and to add as Defendant(s) the individual(s) responsible for the alleged constitutional violations. The Clerk of Court is **DIRECTED** to send to Plaintiff a § 1983 complaint form with this case number affixed thereto.

Plaintiff is **WARNED** that failure to comply with this Order within the allotted time will result in dismissal of this action.

Date: May 28, 2015

**David J. Hale, Judge**
**United States District Court**

cc: Plaintiff, *pro se*
    Defendants
    Jefferson County Attorney
4415.009